## NOTICE OF COMMENCEMENT OF ACTION AND
## REQUEST FOR WAIVER OF SERVICE OF PROCESS
COMMONWEALTH OF VIRGINIA    VA. CODE § 8.01-286.1

Case No.    CL-2015-6197

Fairfax County

[ × ] Circuit Court
[ ] General District Court

| Ludwerd Del Castillo-Guzman, et al. | v. | Triple Canopy, Inc. |
|---|---|---|
| PLAINTIFF | | DEFENDANT |

I, the undersigned [ ] plaintiff [×] attorney for plaintiff hereby notify the [×] defendant [ ]

in the above-styled suit of the following:

1. An action in the above court has been commenced.

2. A copy of the following document(s) accompanies this Notice of Commencement of Action and Request for Waiver of Service of Process:

   [×] Complaint filed on    May 11, 2015
                     DATE

   [ ] Other – Describe             filed on
                                              DATE

3. An extra copy of this Notice of Commencement of Action and Request for Waiver of Service of Process and a prepaid

   means of compliance in writing is enclosed herein and sent on this date    June 4, 2015
                                                                  DATE SENT

   by the following means: first class mail, with postage prepaid

## NOTICE OF CONSEQUENCES OF COMPLIANCE AND FAILURE TO COMPLY WITH THIS REQUEST PURSUANT TO VIRGINIA CODE § 8.01-286.1 BY THE PLAINTIFF FOR WAIVER OF SERVICE OF PROCESS BY THE DEFENDANT:

1. The defendant is allowed no more than 30 days from the date on which the request is sent, or 60 days if the defendant's address is outside the Commonwealth, to return the waiver.

2. Upon failure by the defendant to comply with this request for waiver made by the plaintiff, the court shall impose the costs subsequently incurred in effecting service on the defendant, unless the defendant shows good cause for the failure to comply. These costs shall include, in addition to the costs for effecting service of process, other costs, including reasonable attorneys' fees, of any motion required to collect the costs of service.

3. Upon timely return of the requested waiver of service of process, the defendant is not required to serve an answer or other responsive pleading to the complaint or other initial pleading until 60 days after the date on which this request for waiver of service was sent, or 90 days after that date if the defendant's address is outside the Commonwealth of Virginia.

4. The defendant's waiver of service of process in compliance with this request does not thereby waive any objection to the venue or to the jurisdiction of the court over the person of that defendant, or to any other defense or objection other than objections based on inadequacy of process or service of process.

| 6/2/15 | | |
|---|---|---|
| DATE | | [ ] PLAINTIFF   [×] ATTORNEY |

Meredith M. Ralls, FirstPoint Law Group PC
PRINT NAME

10615 Judicial Dr. Ste. 101, Fairfax, VA 22030, Tel. 703-385-6868
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

**EXHIBIT**
tabbies
**A**

## ACCEPTANCE/WAIVER OF SERVICE OF PROCESS AND WAIVER OF FUTURE SERVICE OF PROCESS AND NOTICE

Case No. CL-2015-06197

COMMONWEALTH OF VIRGINIA   VA. CODE §§ 8.01-327; 20-99.1:1; Rules 3:5, 3:8

Fairfax County _____ , Circuit Court

Ludwerd Del Castillo-Guzman, et al.    v.    Triple Canopy, Inc.
PLAINTIFF            DEFENDANT

I, the undersigned party named below, swear under oath/affirm the following:

1. I am a party [ ] plaintiff [X] defendant in the above-styled suit.
2. I have received a copy of the following documents on this date:

     [X] Complaint filed on        May 11, 2015
                                                    DATE

     [ ] Summons with copy of Complaint filed on _____ attached
                                                       DATE

     [ ] Other – Describe: _____ filed on _____
                                                                 DATE

I understand that my receipt of these copies and my signature below constitute

         [ ] the acceptance of service of process of these copies, or

         [X] a waiver of service of process and notice which may be prescribed by law.

3. I agree to voluntarily and freely waiver any future service of process and notice as checked below in this case:

     [ ] a.   any further service of process.

     [ ] b.   notice of the appointment of a commissioner in chancery and hearings held by such commissioner in chancery, if a commissioner in chancery is appointed.

     [ ] c.   notice of the taking of depositions.

     [ ] d.   notice of the filing of any reports by a commissioner in chancery of the filing of depositions.

     [ ] e.   notice of testimony to be given orally in open court.

     [ ] f.   notice of entry of any order, judgment or decree, including the final decree of divorce.

I understand that, by waiving service of process, I am giving up my right to be notified of the events described immediately above.

_____        _____
       DATE                                      [X] DEFENDANT      [ ] PLAINTIFF

**TO DEFENDANT:** Notify the Court in writing of any changes of your address while this case is pending.

State/Commonwealth of _____ , [ ] City [ ] County of _____

Subscribed and sworn to/affirmed before me this _____ day of _____ , 20 _____

by _____
                                PRINT NAME OF AFFIANT

_____        [ ] CLERK     [ ] DEPUTY CLERK
       DATE                               [ ] NOTARY PUBLIC (My commission expires _____ )
                                                 Registration No. _____

## ACCEPTANCE/WAIVER OF SERVICE OF PROCESS AND
## WAIVER OF FUTURE SERVICE OF PROCESS
## AND NOTICE

Case No.   CL-2015-06197

COMMONWEALTH OF VIRGINIA    VA. CODE §§ 8.01-327; 20-99.1:1, Rules 3:5, 3:8

| Fairfax County | Circuit Court |
|---|---|

| Ludwerd Del Castillo-Guzman, et al. | v. | Triple Canopy, Inc. |
|---|---|---|
| PLAINTIFF | | DEFENDANT |

I, the undersigned party named below, swear under oath/affirm the following:

1. I am a party [ ] plaintiff  [X] defendant in the above-styled suit.

2. I have received a copy of the following documents on this date:

   [X] Complaint filed on _____ May 11, 2015 _____
   DATE

   [ ] Summons with copy of Complaint filed on _____ attached
   DATE

   [ ] Other – Describe: _____ filed on _____
   DATE

   I understand that my receipt of these copies and my signature below constitute

   [ ] the acceptance of service of process of these copies, or

   [X] a waiver of service of process and notice which may be prescribed by law.

3. I agree to voluntarily and freely waiver any future service of process and notice as checked below in this case:

   [ ] a.   any further service of process.

   [ ] b.   notice of the appointment of a commissioner in chancery and hearings held by such commissioner in chancery, if a commissioner in chancery is appointed.

   [ ] c.   notice of the taking of depositions.

   [ ] d.   notice of the filing of any reports by a commissioner in chancery of the filing of depositions.

   [ ] e.   notice of testimony to be given orally in open court.

   [ ] f.   notice of entry of any order, judgment or decree, including the final decree of divorce.

   I understand that, by waiving service of process, I am giving up my right to be notified of the events described immediately above.

_____          _____
DATE                              [X] DEFENDANT      [ ] PLAINTIFF

**TO DEFENDANT:** Notify the Court in writing of any changes of your address while this case is pending.

State/Commonwealth of _____, [ ] City  [ ] County of _____

Subscribed and sworn to/affirmed before me this _____ day of _____, 20 ____

by _____
PRINT NAME OF AFFIANT

_____          [ ] CLERK      [ ] DEPUTY CLERK
DATE                             [ ] NOTARY PUBLIC (My commission expires _____)
                                 Registration No. _____

FORM CC-1406 MASTER 11/09

VIRGINIA:

IN THE CIRCUIT COURT FOR FAIRFAX COUNTY

LUDWERD DEL CASTILLO-GUZMAN, )
    30 Marcy Street, )
    Freehold, NJ 07728, )
                  )
ALEJANDRO CERNA-MOTTA, )
    48 Jackson Street, )
    Freehold, NJ 07728, )
                  )
JUAN CASTRO-RUGEL, )
    30 Marcy Street, )
    Freehold, NJ 07728, )
                  )
GERMAN TAMANI-FASABI, )
    45 Jackson Street, )
    Freehold, NJ 07728, )
                  )
       PLAINTIFFS, )
                  )       2015-00197
v. )
                  )    Case No. _____
TRIPLE CANOPY, INC., )
    12018 Sunrise Valley Drive, )
    Suite 140, )
    Reston, VA 20191, )
                  )
    Serve Registered Agent: )
    Corporation Service Company, )
    1111 East Main Street, )
    Bank of America Center, 16th Floor, )
    Richmond, VA 23219, )
                  )
       DEFENDANT. )
                  )

## **COMPLAINT**

COME NOW your Plaintiffs LUDWERD DEL CASTILLO-GUZMAN, ALEJANDRO

CERNA-MOTTA, JUAN CASTRO-RUGEL, and GERMAN TAMANI-FASABI, by counsel,

and bring their complaint against Defendant TRIPLE CANOPY, INC. as follows:

1

## NATURE OF ACTION

1.      This action arises from Plaintiffs' damages caused by Defendant's breach of contract and failure to pay wages due for security services performed overseas.

## PARTIES

2.      Plaintiff Ludwerd Del Castillo-Guzman is a natural person who resides at 30 Marcy Street, Freehold, New Jersey.

3.      Plaintiff Alejandro Cerna-Motta is a natural person who resides at 48 Jackson Street, Freehold, New Jersey.

4.      Plaintiff Juan Castro-Rugel is a natural person who resides at 30 Marcy Street, Freehold, New Jersey.

5.      Plaintiff German Tamani-Fasabi is a natural person who resides at 45 Jackson Street, Freehold, New Jersey.

6.      Defendant Triple Canopy, Inc. ("Triple Canopy") is a corporation organized under the laws of the State of Illinois and authorized to conduct business in the Commonwealth of Virginia, with its principal place of business at 12018 Sunrise Valley Drive, Suite 140, Reston, Virginia, which is within the County of Fairfax.

## JURISDICTION & VENUE

7.      This Court has personal jurisdiction over the Defendant pursuant to Virginia Code Section 8.01-328.1 because regularly transact business in the Commonwealth of Virginia.

8.      Venue is proper in this Court pursuant to Virginia Code Section 8.01-262 because Defendant maintains its principal place of business in Fairfax County.

2

## FACTUAL ALLEGATIONS

9.     Plaintiffs are all retired from serving in their native country's military.

10.    Triple Canopy is a government contractor who provides many services to the United States Government, including private security services abroad.

11.    Because of their prior military experience, Plaintiffs were hired by Triple Canopy to provide security services for the United States Government abroad, particularly in Iraq and Afghanistan.

12.    Each Plaintiff received an identical contract for employment, which differed only in the name of the employee.

13.    True and accurate copies of a sample of Plaintiffs' contracts are attached hereto.

14.    Plaintiff Del Castillo-Guzman worked for Triple Canopy from approximately November 2007 through January 2010.

15.    Plaintiff Cerna-Motta worked for Triple Canopy from approximately October 2005 through July 2011.

16.    Plaintiff Castro-Rugel worked for Triple Canopy from approximately April 2007 through October 2009.

17.    Plaintiff Tamani-Fasabi worked for Triple Canopy from approximately April 2006 through July 2011.

18.    Wages owed to Plaintiffs did not become payable and due until Plaintiffs ceased their employment with Triple Canopy.

19.    Triple Canopy failed to pay Plaintiffs for all work performed under their contracts.

3

20.     Plaintiffs worked eight to twelve hours per day and at least five days per week, thereby often working at least forty hours per week but often between fifty and sixty hours per week.

21.     However, Triple Canopy only agreed to pay Plaintiffs, at a maximum, $33.00 per day, or $4.13 per hour.

22.     Triple Canopy improperly designated Plaintiffs as independent contractors, when Plaintiffs were actually Triple Canopy's employees.

23.     Triple Canopy exercised direct control over Plaintiffs in the following ways:

    a.  Triple Canopy paid daily wages to Plaintiffs;

    b.  Triple Canopy required that Plaintiffs possess a certain level of training for their positions, and provided additional required training to Plaintiffs;

    c.  Triple Canopy prevented Plaintiffs from working for other employers while they worked for Defendant,

    d.  Triple Canopy prevented Plaintiffs from working for competing enterprises and for at least six months after their engagement with Triple Canopy was terminated;

    e.  Triple Canopy required Plaintiffs to adhere to the company's standards for personal attire and hygiene;

    f.  Triple Canopy provided Plaintiffs with equipment, for which Plaintiffs were liable in the case of loss or damage, and which Plaintiffs were required to return to Triple Canopy;

    g.  Plaintiffs were not permitted to assign their duties to others;

4

h. Plaintiffs were not in control of the time, place, or manner for accomplishing their tasks.

24. Plaintiffs' contracts with Triple Canopy uniformly state that "This Agreement shall be governed by and construed under the laws of the State of Virginia, USA, as if performed wholly within the state."

## CLAIMS FOR RELIEF

### COUNT ONE
#### *Breach of Contract*

25. The foregoing paragraphs are re-alleged herein.

26. Triple Canopy agreed to pay Plaintiffs $33.00 for each day of work that Plaintiffs performed.

27. Triple Canopy failed to pay Plaintiffs for all days of work that they performed.

28. Plaintiffs were damaged by Triple Canopy's failure to pay all amounts due to them under their contracts.

29. WHEREFORE, Plaintiffs demand that judgment be entered against Triple Canopy and in favor of Plaintiffs in the aggregate amount of $350,000.00, or $50,000 for Plaintiff Del Castillo-Guzman; $55,000 for Plaintiff Cerna-Motta; $125,000 for Plaintiff Castro-Rugel; and $120,000 for Plaintiff Tamani-Fasabi, with interest and costs as allowable under the laws of the Commonwealth of Virginia.

### COUNT TWO
#### *Virginia Code Section 40.1-29*

30. The foregoing paragraphs are re-alleged herein.

31. At all times alleged herein, Plaintiffs have never been indebted to Triple Canopy.

32. Triple Canopy is an employer that employed Plaintiffs under the laws of the Commonwealth of Virginia.

33. Triple Canopy exercised operational control of Plaintiffs' workplace, including the work performed, environment, and conditions of employment, and managerial decisions such as hiring, firing, compensating, supervising, creating schedules, maintaining time and other employment records, determining the rate and method of compensation.

34. However, Triple Canopy failed to pay Plaintiffs all wages due to them upon their termination for work performed prior to their termination.

35. WHEREFORE, Plaintiffs demand that judgment be entered against Triple Canopy and in favor of Plaintiffs in the aggregate amount of $350,000.00, or $50,000 for Plaintiff Del Castillo-Guzman; $55,000 for Plaintiff Cerna-Motta; $125,000 for Plaintiff Castro-Rugel; and $120,000 for Plaintiff Tamani-Fasabi, with attorney's fees, interest, and costs as allowable under Virginia Code Section 40.1-29 and other laws of the Commonwealth of Virginia.

<div align="center">

COUNT THREE
*Virginia Minimum Wage Act*

</div>

36.   The foregoing paragraphs are re-alleged herein.

37.   At all times alleged herein, Plaintiffs have never been indebted to Triple Canopy.

38.   Triple Canopy is an employer that employed Plaintiffs under the laws of the Commonwealth of Virginia.

39.   Triple Canopy exercised operational control of Plaintiffs' workplace, including the work performed, environment, and conditions of employment, and managerial decisions such as hiring, firing, compensating, supervising, creating schedules, maintaining time and other employment records, determining the rate and method of compensation.

40.   However, Triple Canopy paid Plaintiffs, at most, $4.13 per every hour worked.

<div align="center">

6

</div>

41.     Triple Canopy violated the Virginia Minimum Wage Act, Va. Code Ann. §§ 40.1-28.8 to 40.1-28.12, when it failed to pay Plaintiffs the federal minimum wage for every regular hour worked.

42.     WHEREFORE, Plaintiffs demand that judgment be entered against Triple Canopy and in favor of Plaintiffs in the aggregate amount of $700,000.00, or $100,000 for Plaintiff Del Castillo-Guzman; $110,000 for Plaintiff Cerna-Motta; $250,000 for Plaintiff Castro-Rugel; and $240,000 for Plaintiff Tamani-Fasabi, with interest, costs, and attorney's fees as allowable under the Virginia Minimum Wage Act and other laws of the Commonwealth of Virginia.

## COUNT FOUR
### Fair Labor Standards Act

43.     The foregoing paragraphs are re-alleged herein.

44.     At all times alleged herein, Plaintiffs have never been indebted to Triple Canopy.

45.     At all times alleged herein, Triple Canopy was an enterprise engaged in interstate commerce, or in the production of goods for interstate commerce, whose annual gross volume of sales or business done was not less than $500,000.

46.     Triple Canopy engaged in interstate commerce by:

a.      Corresponding with individuals in other states via telephone;

b.      Sending and receiving mail to and from individuals in other states;

c.      Transacting business in interstate commerce; and

d.      Employing goods manufactured and distributed in other states.

47.     Triple Canopy exercised operational control of Plaintiffs' workplace, including the work performed, environment, and conditions of employment, and managerial decisions such as hiring, firing, compensating, supervising, creating schedules, maintaining time and other employment records, determining the rate and method of compensation.

7

48.    However, Triple Canopy paid Plaintiffs, at most, $4.13 per every hour worked.

49.    Triple Canopy violated the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, when it failed to pay Plaintiffs the federal minimum wage for every regular hour worked, and when it failed to pay one and one-half times the federal minimum wage for every overtime hour worked.

50.    WHEREFORE, Plaintiffs demand that judgment be entered against Triple Canopy and in favor of Plaintiffs in the aggregate amount of $700,000.00, or $100,000 for Plaintiff Del Castillo-Guzman; $110,000 for Plaintiff Cerna-Motta; $250,000 for Plaintiff Castro-Rugel; and $240,000 for Plaintiff Tamani-Fasabi, with interest, costs, and attorney's fees as allowable under the laws of the Commonwealth of Virginia and the Fair Labor Standards Act.

<div style="margin-left:40%">

Respectfully Submitted,
LUDWERD DEL CASTILLO-GUZMAN
ALEJANDRO CERNA-MOTTA
JUAN CASTRO-RUGEL
GERMAN TAMANI-FASABI
By Counsel

</div>

FIRSTPOINT LAW GROUP P.C.

Meredith M. Ralls, VSB 82548
Katherine Martell, VSB 77027
10615 Judicial Drive, Suite 101
Fairfax, VA 22030
Tel: 703-385-6868
Fax: 703-385-7009
mralls@firstpointlaw.com

19587 : 5502

CONFIDENTIAL AND PROPRIETARY INFORMATION

## INDEPENDENT CONTRACTOR AGREEMENT

This Agreement is made as of the date listed below (the "Effective Date") by and between Triple Canopy Operations, Inc., an Illinois Corporation with its main office located at 2250 Corporate Park Drive, Suite 300, Herndon, Virginia 20171 USA (the "Company") and the undersigned, an individual ("Independent Contractor" or "IC").

**Definitions and Terms:**

Name of IC:   __Ludwerd Roldan Del Castillo Guzman__          Effective Date: _____ __15 November 2008__

Mission Location:   ____ __Baghdad, Iraq__ _____          Term of Services:   ____ __12__     __months__

Daily Rate:  $ ____ __33   per day__ _____          End Date: _____ __31 January 2010__ _____

Term Completion Bonus:  $ ___ __1500__  __per 365 days__          Monthly Advance:  $ ___ __100__   __per   month__

Training Rate: _____ __N/A__ _____          (applies to Training at the Mission Location only)

| Service Category: (select proper category); | | | | |
|---|---|---|---|---|
| ( ) | Supervisor | ( ) | Operational Support | |
| ( ) | Senior Guard | ( ) | Administrative Support | |
| (X) | Guard | ( ) | Other: | |
| ( ) | Guard Driver | | | |

"*Customer*" means the client of the Company.

"*Prime Contract*" means an agreement between the Company and the Customer.

"*Services*" means the services which IC will provide to the Company or the Customer pursuant to this Agreement at the direction of the Company.

"*Training Rate*" means the amount the IC will be paid while at the Mission Location completing the company's required training. After completion of the training, the IC will be paid the Daily Rate and Term Completion Bonus as set forth below. Training conducted at any location other than the Mission Location is not eligible for Training Rate payments.

"*Company Policies*" refers to the Company policies that address various performance-related requirements and expectations that apply to the conduct and performance of IC. Copies of the Company Policies will be made available to IC and are hereby incorporated by reference into this Agreement.

### Agreement

1. **Engagement.** The Company hereby engages IC to perform the Services as an independent contractor in the service category listed above ("Service Category") in accordance with the terms and conditions of this Agreement. IC is not an employee of Company and is not entitled to any employment benefits or rights not specifically set forth in this Agreement. The Services will be performed primarily in and around the area specified above (the "Mission Location"). The applicable qualifications for the Service categories above are included in the Addendum A to this Agreement. IC represents that IC has reviewed the qualification requirements provided in Addendum A and further represents that IC meets the applicable requirements. IC also acknowledges that payment to IC to perform the Services is contingent upon (1) IC's successful

completion of the Company's required training, (2) IC's ability and availability to deploy to the Mission Location, and (3) the approval and issuance of a Moderate Risk Public Trust (MRPT) or other applicable security clearance to IC by the U.S. Government. Failure to successfully complete the required training, to deploy to the Mission Location, or to obtain the required security clearance will entitle Company to terminate this Agreement at its discretion without further payment to IC. If IC fails to obtain the required security clearance and has already been deployed to the Mission Location, IC will be paid for services rendered up to the date of termination.

2. **Term and Termination.** The Services provided shall for the period listed above ("Term of Services"), and shall end on the date listed above ("End Date"). Notwithstanding the Term of Services

BESF INDEPENDENT CONTRACTOR AGREEMENT

**EXHIBIT A**

UPDATED 02.27.08

CONFIDENTIAL AND PROPRIETARY INFORMATION

and End Date, the Company may terminate this Agreement immediately at any time without cause by giving notice to IC. Upon termination of this Agreement, IC shall immediately return all property and equipment issued by Company or the Customer to IC in a safe and effective manner. IC acknowledges and agrees that IC may be terminated immediately upon notice from the Company and that IC is not entitled to any severance compensation or any cure period.

**3. Compensation.** In consideration of the Services to be performed by IC, the Company agrees to pay IC the daily rate ("**Daily Rate**") listed above. **The Daily Rate payments will begin once IC arrives at the Mission Location and has completed all of the Company's required training. If the IC is deployed to the Mission Location for completion of the Company's required training, the IC will receive the Training Rate until the required training is completed.** All payments will be calculated in U.S. Dollars. While performing the Services at the Daily Rate, IC also shall earn a term completion bonus ("**Term Completion Bonus**") in the amount listed above, which will be paid in full upon the successful completion of the entire term of this Agreement. IC will be paid the Daily Rate monthly in arrears. If IC (1) fails to complete the term of the Agreement without cause, as determined by Company, (2) is terminated for cause by Company, or (3) violates any other term of this Agreement, IC will not receive or be entitled to any portion of the Term Completion Bonus.

**4. Expenses and Insurance.** Company will provide IC with a monthly advance payment ("**Monthly Advance**") as stated above for use by the IC for personal expenses. The monthly advance payment shall be deducted from IC's monthly compensation from Company. No cash per diem or cash incidental will be paid to IC. The Company will provide IC with Defense Base Act and/or other insurance coverage pursuant to the Prime Contract and the appropriate U.S. regulations.

**5. Life Support, Equipment and Travel.** IC will be provided with food, housing and certain equipment specified by the Company. Any and all equipment provided to IC by Company is the responsibility of IC, and IC shall compensate the Company for any lost or damaged equipment. Any and all equipment provided to IC will be returned to the Company at the end of this Agreement. IC will be provided with airfare to and from the Mission Location, except as may otherwise be stated in this Agreement.

**6. Non-Compete.** During the term of this Agreement and for six months thereafter, IC shall not engage in any business or other activities, which are or may be, directly or indirectly, competitive with the business activities of the Company, including, but not limited to, performing similar services for a party other than the Company

without obtaining the prior written consent of the Company. In light of the continuing obligations required of IC under this Agreement, IC agrees that during the term of this Agreement and for six months thereafter, IC will provide a complete copy of this Agreement to any prospective employer or contractor prior to accepting employment with or being retained by such employer or contractor. To this end, IC may obtain additional copies of this Agreement upon request. IC acknowledges that the Company would not have retained IC if this Agreement had not contained this Section 6.

**7. Dangerous Environment.** IC UNDERSTANDS AND ACKNOWLEDGES THAT PERFORMING THE SERVICES WILL EXPOSE IC TO MANY OF THE HAZARDS OF A HIGH THREAT ENVIRONMENT INCLUDING BUT NOT LIMITED TO THE EXTREME AND UNPREDICTABLE THREATS AND HAZARDS OF WAR AND OTHER COMMON AND UNCOMMON THREATS AND HAZARDS. IC FULLY APPRECIATES THAT PERFORMING THE SERVICES IS INHERENTLY DANGEROUS AND MAY RESULT IN DEATH OR PERSONAL INJURY TO IC, OR OTHERS, OR DAMAGE TO PERSONAL PROPERTY.

**8. Assumption of Risk.** IC VOLUNTARILY, WILLINGLY, AND KNOWINGLY ASSUMES ANY AND ALL RISKS, KNOWN AND UNKNOWN, AND IN ANY WAY ASSOCIATED WITH GENERAL TRAINING, PERFORMING THE SERVICES, AND TRAVELING TO AND FROM AND BEING IN EACH MISSION LOCATION.

**9. Representations and Warranties of Independent Contractor.** IC represents and warrants that: IC (a) has a valid and current passport (b) has the minimum required number of years of military, similar police, or local guard force experience, (c) is physically and mentally fit to withstand the rigors of the environment and duties, (d) is not a party to any agreement, contract or arrangement that prohibits IC from entering into this Agreement with the Company or performing the Services, and (e) entering into this Agreement and performing the Services does not and shall not violate any applicable law, rule or regulation.

**10. Safeguarding of Information.** IC shall exercise the utmost discretion in regard to all matters relating to IC's duties and functions. IC shall not communicate to any person any information known to IC by reason of IC's performance of the Services under this Agreement which has not been made public, except in the necessary performance of IC's duties or upon written authorization of Company. All documents and records (including photographs) generated during the performance of work under this Agreement shall be for the sole use of and become the exclusive property of Company. Furthermore, no article, book, pamphlet, recording, broadcast, speech, television appearance, film or photograph concerning any aspect of work performed under this Agreement shall be published or disseminated through any media without written authorization of

CONFIDENTIAL AND PROPRIETARY INFORMATION

Company. If contacted by the media, IC will state nothing more than "no comment" and will refer the media representative to the Company. These obligations do not cease upon the expiration or termination of this Agreement. Any violation of this provision by IC will entitle Company to terminate IC at its discretion, or withhold any Term Completion Bonus or other compensation to be paid to IC.

11. Conduct of Independent Contractor. IC must comply with all laws and regulations of the Mission Location country including, but not limited to, laws related to currency, black market, and drug use and alcohol abuse. IC must comply with applicable laws and regulations of the United States, and applicable laws and regulations of any country where IC is a citizen or resident. IC must perform effectively in the implementation of this Contract and must comply with the Prime Contract. IC must respect local customs and conform to a high standard of moral and ethical conduct. Personal attire and hygiene must be in accordance with the Company's policies. IC must comply with the Company Policies, Customer's rules, regulations, procedures and polices, and the United States Department of State security, health and safety regulations, and directives. Any violation of this provision entitles Company to terminate IC at its discretion, and withhold payment of the Term Completion Bonus.

12. Release and Hold Harmless. IC AGREES TO RELEASE AND HOLD HARMLESS THE COMPANY AND THE CUSTOMER, THEIR RESPECTIVE CORPORATE AFFILIATES AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS AND THEIR SUCCESSORS AND ASSIGNS FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES, LIABILITIES, DAMAGES, AND EXPENSES (INCLUDING, WITHOUT LIMITATION, INCIDENTAL COSTS AND EXPENSES, REASONABLE ATTORNEYS' FEES, REASONABLE COST OF INVESTIGATION AND LITIGATION, INTEREST AND PENALTIES) ARISING OUT OF ANY DAMAGES, INJURIES OR DEATHS TO IC OR OTHER PERSONS RESULTING, DIRECTLY OR INDIRECTLY, FROM THE SERVICES

PERFORMED BY IC EVEN WHERE THE LOSS, DAMAGE, PERSONAL INJURY, OR DEATH IS CAUSED OR CONTRIBUTED TO, IN ANY MANNER, BY THE COMPANY.

13. Heirs Etc. of Independent Contractor. EVERY PROVISION IN THIS AGREEMENT IS EQUALLY BINDING ON AND EFFECTIVE AS TO THE HEIRS, AGENTS, SPOUSE (IF ANY), CHILDREN, REPRESENTATIVES, GUARDIANS, ASSIGNS, DEPENDENTS, EXECUTORS, ADMINISTRATORS, ATTORNEYS AND ANY OTHER PERSON OR ENTITY CLAIMING TO REPRESENT IC OR HIS ESTATE.

14. Governing Law and Jurisdiction. This Agreement shall be governed by and construed under the laws of the State of Virginia, USA, as if performed wholly within the state and without giving effect to the principles of conflicts of laws. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement must be brought against any of the parties in the courts of the State of Virginia, USA. Notwithstanding any other provision in this Agreement, Company reserves the right to pursue any and all available legal remedies and actions against IC in the event of a breach or violation of the terms of this Agreement.

15. Foreign Language Version. At its discretion, Company may provide IC with a version of this Agreement translated into IC's native language for the convenience of IC. In the event that there is a conflict or inconsistency between the English-language version of this Agreement and the Foreign language-version, the English language version controls.

16. Jury Trial Waiver. The Company and IC knowingly and voluntarily agree to waive their respective rights to a jury trial on any claim arising out of or relating to this Agreement and thereby agree not to demand a trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement.

BY SIGNING BELOW, IC REPRESENTS AND WARRANTS THAT HE HAS CAREFULLY READ THIS AGREEMENT AND FULLY UNDERSTANDS ITS CONTENTS, INCLUDING IC'S PERSONAL ASSUMPTION OF RISK, THE RELEASE OF LIABILITY, AND THE LIMITATION ON EMPLOYMENT. IC FULLY UNDERSTANDS THAT, BY SIGNING BELOW, HE IS WAIVING SOME OF HIS LEGAL RIGHTS, AND IC IS FREE TO SEEK THE ADVICE OF AN ATTORNEY BEFORE SIGNING.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed.

Triple Canopy Operations, Inc.

Mark Young - BESF Project Manager

Independent Contractor

Ludwerd Roldan Del Castillo Guzman

Attachments: Addendum A (Qualifications)

CONFIDENTIAL AND PROPRIETARY INFORMATION

# INDEPENDENT CONTRACTOR AGREEMENT

This Agreement is made as of the date listed below (the "Effective Date") by and between Triple Canopy Operations, Inc., an Illinois Corporation with its main office located at 2250 Corporate Park Drive, Suite 300, Herndon, Virginia 20171 USA (the "Company") and the undersigned, an individual ("Independent Contractor" or "IC").

## Definitions and Terms:

Name of IC: _CERNA MOTTA, ALEJANDRO ELADIO_     Effective Date: _20 OCT 2006_

Mission Location: _BESF_     Term of Services: _12_ months

Daily Rate: $ _33_ per _day_     End Date: _1 JAN 2008_

Term Completion Bonus: $ _1500 per 730_     Monthly Advance: $ _100_ per _month_

Service Category:
(select proper category)

( ) Supervisor
( ) Senior Guard
(✕) Guard
( ) Guard Driver

( ) Operational Support
( ) Administrative Support
( ) Other: _____

"Customer" means the client of the Company.

"Prime Contract" means an agreement between the Company and the Customer.

"Services" means the services which IC will provide to the Company or the Customer pursuant to this Agreement at the direction of the Company.

"Company Policies" refers to the Company policies that address various performance-related requirements and expectations that apply to the conduct and performance of IC. Copies of the Company Policies will be made available to IC and are hereby incorporated by reference into this Agreement.

## Agreement

**1. Engagement.** The Company hereby engages IC to perform the Services as an independent contractor in the service category listed above ("Service Category") in accordance with the terms and conditions of this Agreement. IC is not an employee of Company and is not entitled to any employment benefits or rights not specifically set forth in this Agreement. The Services will be performed primarily in and around the area specified above (the "Mission Location"). The applicable qualifications for the Service categories above are included in the Addendum A to this Agreement. IC represents that IC has reviewed the qualification requirements provided in Addendum A and further represents that IC meets the applicable requirements. IC also acknowledges that payment to IC to perform the Services is contingent upon (1) IC's successful completion of the Company's required training, (2) IC's ability and availability to deploy to the Mission Location, and (3) the approval and issuance of a Moderate Risk Public Trust (MRPT) or other applicable security clearance to IC by the

U.S. Government. Failure to successfully complete the required training, to deploy to the Mission Location, or to obtain the required security clearance will entitle Company to terminate this Agreement at its discretion without further payment to IC. If IC fails to obtain the required security clearance and has already been deployed to the Mission Location, IC will be paid for services rendered up to the date of termination.

**2. Term and Termination.** The Services provided shall for the period listed above ("Term of Services"), and shall end on the date listed above ("End Date"). Notwithstanding the Term of Services and End Date, the Company may terminate this Agreement immediately at any time without cause by giving notice to IC. Upon termination of this Agreement, IC shall immediately return all property and equipment issued by Company or the Customer to IC in a safe and effective manner. IC acknowledges and agrees that IC may be terminated immediately upon notice from the Company and that

EXHIBIT
**B**

CONFIDENTIAL AND PROPRIETARY INFORMATION

IC is not entitled to any severance compensation or any cure period.

3. **Compensation.** In consideration of the Services to be performed by IC, the Company agrees to pay IC the daily rate ("Daily Rate") listed above.   The Daily Rate payments will begin once IC arrives at the Mission Location.    All payments will be calculated in U.S. Dollars.  IC also shall earn a term completion bonus ("Term Completion Bonus") in the amount listed above, which will be paid in full upon the successful completion of the entire term of this Agreement.   IC will be paid the Daily Rate monthly in arrears.  If IC (1) fails to complete the term of the Agreement without cause, as determined by Company, (2) is terminated for cause by Company, or (3) violates any other term of this Agreement, IC will not receive or be entitled to any portion of the Term Completion Bonus.

4. **Expenses and Insurance.**  Company will provide IC with a monthly advance payment ("Monthly Advance") as stated above for use by the IC for personal expenses.  The monthly advance payment shall be deducted from IC's monthly compensation from Company.  No cash per diem or cash incidental will be paid to IC.  The Company will provide IC with Defense Base Act and/or other insurance coverage pursuant to the Prime Contract and the appropriate U.S. regulations.

5. **Life Support, Equipment and Travel.** IC will be provided with food, housing and certain equipment specified by the Company.  Any and all equipment provided to IC by Company is the responsibility of IC, and IC shall compensate the Company for any lost or damaged equipment.    Any and all equipment provided to IC will be returned to the Company at the end of this Agreement.  IC will be provided with airfare to and from the Mission Location, except as may otherwise be stated in this Agreement.

6. **Non-Compete.**    During the term of this Agreement and for six months thereafter, IC shall not engage in any business or other activities, which are or may be, directly or indirectly, competitive with the business activities of the Company,  including,  but  not  limited  to, performing similar services for a party other than the Company without obtaining the prior written consent of the Company.  In light of the continuing obligations required of IC under this Agreement, IC agrees that during the term of this Agreement and for six months thereafter, IC will provide a complete copy of this Agreement to any prospective employer or contractor prior to accepting employment with or being retained by such employer or contractor.   To

this end, IC may obtain additional copies of this Agreement upon request.    IC acknowledges that the Company would not have retained IC if this Agreement had not contained this Section 6.

7. **Dangerous Environment.** IC UNDERSTANDS AND ACKNOWLEDGES THAT PERFORMING THE SERVICES WILL EXPOSE IC TO MANY OF THE HAZARDS OF A HIGH THREAT ENVIRONMENT INCLUDING BUT NOT LIMITED TO THE EXTREME AND UNPREDICTABLE THREATS AND HAZARDS OF WAR AND OTHER COMMON AND UNCOMMON THREATS AND HAZARDS. IC FULLY APPRECIATES THAT PERFORMING THE SERVICES IS INHERENTLY DANGEROUS AND MAY RESULT IN DEATH OR PERSONAL INJURY TO IC, OR OTHERS, OR DAMAGE TO PERSONAL PROPERTY.

8. **Assumption   of   Risk.**     IC   VOLUNTARILY, WILLINGLY, AND KNOWINGLY ASSUMES ANY AND ALL RISKS, KNOWN AND UNKNOWN, AND IN ANY WAY ASSOCIATED WITH GENERAL TRAINING, PERFORMING THE SERVICES, AND TRAVELING TO AND FROM AND BEING IN EACH MISSION LOCATION.

9. **Representations      and      Warranties      of Independent   Contractor.**      IC   represents   and warrants that: IC (a) has a valid and current passport (b) has the minimum required number of years of military,  similar  police,  or  local  guard  force experience, (c) is physically and mentally fit to withstand the rigors of the environment and duties, (d) is not a party to any agreement, contract or arrangement that prohibits IC from entering into this Agreement with the Company or performing the Services, and (e) entering into this Agreement and performing  the  Services  does  not  and  shall  not violate any applicable law, rule or regulation.

10. **Safeguarding of Information.**  IC shall exercise the utmost discretion in regard to all matters relating to IC's duties and functions.   IC shall not communicate to any person any information known to IC by reason of IC's performance of the Services under this Agreement which has not been made public, except in the necessary performance of IC's duties or upon written authorization of Company. All documents and records (including photographs) generated during the performance of work under this Agreement shall be for the sole use of and become  the  exclusive  property  of  Company. Furthermore, no article, book, pamphlet, recording, broadcast, speech, television appearance, film or photograph  concerning  any  aspect  of  work performed under this Agreement shall be published or disseminated through any media without written authorization of Company.   If contacted by the media,  IC  will  state  nothing  more  than  "no comment" and will refer the media representative

to the Company. These obligations do not cease upon the expiration or termination of this Agreement. Any violation of this provision by IC will entitle Company to terminate IC at its discretion, or withhold any Term Completion Bonus or other compensation to be paid to IC.

**11. Conduct of Independent Contractor.** IC must comply with all laws and regulations of the Mission Location country including, but not limited to, laws related to currency, black market, and drug use and alcohol abuse. IC must comply with applicable laws and regulations of the United States, and applicable laws and regulations of any country where IC is a citizen or resident. IC must perform effectively in the implementation of this Contract and must comply with the Prime Contract. IC must respect local customs and conform to a high standard of moral and ethical conduct. Personal attire and hygiene must be in accordance with the Company's policies. IC must comply with the Company Policies, Customer's rules, regulations, procedures and polices, and the United States Department of State security, health and safety regulations, and directives. Any violation of this provision entitles Company to terminate IC at its discretion, and withhold payment of the Term Completion Bonus.

**12. Release and Hold Harmless.** IC AGREES TO RELEASE AND HOLD HARMLESS THE COMPANY AND THE CUSTOMER, THEIR RESPECTIVE CORPORATE AFFILIATES AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS AND THEIR SUCCESSORS AND ASSIGNS FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES, LIABILITIES, DAMAGES, AND EXPENSES (INCLUDING, WITHOUT LIMITATION, INCIDENTAL COSTS AND EXPENSES, REASONABLE ATTORNEYS' FEES, REASONABLE COST OF INVESTIGATION AND LITIGATION, INTEREST AND PENALTIES) ARISING OUT OF ANY DAMAGES, INJURIES OR DEATHS TO IC OR OTHER PERSONS RESULTING, DIRECTLY OR INDIRECTLY, FROM THE SERVICES PERFORMED BY IC EVEN WHERE THE LOSS, DAMAGE, PERSONAL INJURY, OR DEATH IS CAUSED OR CONTRIBUTED TO, IN ANY MANNER, BY THE COMPANY.

**13. Heirs Etc. of Independent Contractor.** EVERY PROVISION IN THIS AGREEMENT IS EQUALLY BINDING ON AND EFFECTIVE AS TO THE HEIRS, AGENTS, SPOUSE (IF ANY), CHILDREN, REPRESENTATIVES, GUARDIANS, ASSIGNS, DEPENDENTS, EXECUTORS, ADMINISTRATORS, ATTORNEYS AND ANY OTHER PERSON OR ENTITY CLAIMING TO REPRESENT IC OR HIS ESTATE.

**14. Governing Law and Jurisdiction.** This Agreement shall be governed by and construed under the laws of the State of Virginia, USA, as if performed wholly within the state and without giving effect to the principles of conflicts of laws. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement must be brought against any of the parties in the courts of the State of Virginia, USA. Notwithstanding any other provision in this Agreement, Company reserves the right to pursue any and all available legal remedies and actions against IC in the event of a breach or violation of the terms of this Agreement.

**15. Foreign Language Version.** At its discretion, Company may provide IC with a version of this Agreement translated into IC's native language for the convenience of IC. In the event that there is a conflict or inconsistency between the English-language version of this Agreement and the Foreign language-version, the English language version controls.

BY SIGNING BELOW, IC REPRESENTS AND WARRANTS THAT HE HAS CAREFULLY READ THIS AGREEMENT AND FULLY UNDERSTANDS ITS CONTENTS, INCLUDING IC'S PERSONAL ASSUMPTION OF RISK, THE RELEASE OF LIABILITY, AND THE LIMITATION ON EMPLOYMENT. IC FULLY UNDERSTANDS THAT, BY SIGNING BELOW, HE IS WAIVING SOME OF HIS LEGAL RIGHTS, AND IC IS FREE TO SEEK THE ADVICE OF AN ATTORNEY BEFORE SIGNING.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed.

Triple Canopy Operations, Inc.

Independent Contractor

CERNA. Alejandro

**Attachments:** Addendum A (Qualifications)

BESF INDEPENDENT CONTRACTOR AGREEMENT

UPDATED 08.31.06

CONFIDENTIAL AND PROPRIETARY INFORMATION

## INDEPENDENT CONTRACTOR AGREEMENT

This Agreement is made as of the date listed below (the "Effective Date") by and between Triple Canopy Operations, Inc., an Illinois Corporation with its main office located at 2250 Corporate Park Drive, Suite 300, Herndon, Virginia 20171 USA (the "Company") and the undersigned, an individual ("Independent Contractor" or "IC").

### Definitions and Terms:

Name of IC: ___Alejandro Eladio Cerna Motta___    Effective Date: ___20 November 2007___

Mission Location: ___BESF___    Term of Services: ___12___ months

Daily Rate: $ __33__ per __day__    End Date: ___30 December 2008___

Term Completion Bonus: $ __1500__ per __365__    Monthly Advance: $ __100__ per __month__

| Service Category: (select proper category) | | | | | |
|---|---|---|---|---|---|
| ( ) | Supervisor | | ( ) | Operational Support | |
| ( ) | Senior Guard | | ( ) | Administrative Support | |
| (X) | Guard | | ( ) | Other: _____ | |
| ( ) | Guard Driver | | | | |

"*Customer*" means the client of the Company.

"*Prime Contract*" means an agreement between the Company and the Customer.

"*Services*" means the services which IC will provide to the Company or the Customer pursuant to this Agreement at the direction of the Company.

"*Company Policies*" refers to the Company policies that address various performance-related requirements and expectations that apply to the conduct and performance of IC. Copies of the Company Policies will be made available to IC and are hereby incorporated by reference into this Agreement.

### Agreement

1. **Engagement.** The Company hereby engages IC to perform the Services as an independent contractor in the service category listed above ("Service Category") in accordance with the terms and conditions of this Agreement. IC is not an employee of Company and is not entitled to any employment benefits or rights not specifically set forth in this Agreement. The Services will be performed primarily in and around the area specified above (the "Mission Location"). The applicable qualifications for the Service categories above are included in Addendum A to this Agreement. IC represents that IC has reviewed the qualification requirements provided in Addendum A and further represents that IC meets the applicable requirements. IC also acknowledges that payment to IC to perform the Services is contingent upon (1) IC's successful completion of the Company's required training, (2) IC's ability and availability to deploy to the Mission Location, and (3) the approval and issuance of a Moderate Risk Public Trust (MRPT) or other applicable security clearance to IC by the

U.S. Government. Failure to successfully complete the required training, to deploy to the Mission Location, or to obtain the required security clearance will entitle Company to terminate this Agreement at its discretion without further payment to IC. If IC fails to obtain the required security clearance and has already been deployed to the Mission Location, IC will be paid for services rendered up to the date of termination.

2. **Term and Termination.** The Services provided shall for the period listed above ("Term of Services"), and shall end on the date listed above ("End Date"). Notwithstanding the Term of Services and End Date, the Company may terminate this Agreement immediately at any time without cause by giving notice to IC. Upon termination of this Agreement, IC shall immediately return all property and equipment issued by Company or the Customer to IC in a safe and effective manner. IC acknowledges and agrees that IC may be terminated immediately upon notice from the Company and that

BESF INDEPENDENT CONTRACTOR AGREEMENT

**EXHIBIT**

C

UPDATED 08.31.06

CONFIDENTIAL AND PROPRIETARY INFORMATION

IC is not entitled to any severance compensation or any cure period.

3. **Compensation.** In consideration of the Services to be performed by IC, the Company agrees to pay IC the daily rate ("Daily Rate") listed above. The Daily Rate payments will begin once IC arrives at the Mission Location. All payments will be calculated in U.S. Dollars. IC also shall earn a term completion bonus ("Term Completion Bonus") in the amount listed above, which will be paid in full upon the successful completion of the entire term of this Agreement. IC will be paid the Daily Rate monthly in arrears. If IC (1) fails to complete the term of the Agreement without cause, as determined by Company, (2) is terminated for cause by Company, or (3) violates any other term of this Agreement, IC will not receive or be entitled to any portion of the Term Completion Bonus.

4. **Expenses and Insurance.** Company will provide IC with a monthly advance payment ("Monthly Advance") as stated above for use by the IC for personal expenses. The monthly advance payment shall be deducted from IC's monthly compensation from Company. No cash per diem or cash incidental will be paid to IC. The Company will provide IC with Defense Base Act and/or other insurance coverage pursuant to the Prime Contract and the appropriate U.S. regulations.

5. **Life Support, Equipment and Travel.** IC will be provided with food, housing and certain equipment specified by the Company. Any and all equipment provided to IC by Company is the responsibility of IC, and IC shall compensate the Company for any lost or damaged equipment. Any and all equipment provided to IC will be returned to the Company at the end of this Agreement. IC will be provided with airfare to and from the Mission Location, except as may otherwise be stated in this Agreement.

6. **Non-Compete.** During the term of this Agreement and for six months thereafter, IC shall not engage in any business or other activities, which are or may be, directly or indirectly, competitive with the business activities of the Company, including, but not limited to, performing similar services for a party other than the Company without obtaining the prior written consent of the Company. In light of the continuing obligations required of IC under this Agreement, IC agrees that during the term of this Agreement and for six months thereafter, IC will provide a complete copy of this Agreement to any prospective employer or contractor prior to accepting employment with or being retained by such employer or contractor. To this end, IC may obtain additional copies of this Agreement upon request. IC acknowledges that the Company would not have retained IC if this Agreement had not contained this Section 6.

7. **Dangerous Environment.** IC UNDERSTANDS AND ACKNOWLEDGES THAT PERFORMING THE SERVICES WILL EXPOSE IC TO MANY OF THE HAZARDS OF A HIGH THREAT ENVIRONMENT INCLUDING BUT NOT LIMITED TO THE EXTREME AND UNPREDICTABLE THREATS AND HAZARDS OF WAR AND OTHER COMMON AND UNCOMMON THREATS AND HAZARDS. IC FULLY APPRECIATES THAT PERFORMING THE SERVICES IS INHERENTLY DANGEROUS AND MAY RESULT IN DEATH OR PERSONAL INJURY TO IC, OR OTHERS, OR DAMAGE TO PERSONAL PROPERTY.

8. **Assumption of Risk.** IC VOLUNTARILY, WILLINGLY, AND KNOWINGLY ASSUMES ANY AND ALL RISKS, KNOWN AND UNKNOWN, AND IN ANY WAY ASSOCIATED WITH GENERAL TRAINING, PERFORMING THE SERVICES, AND TRAVELING TO AND FROM AND BEING IN EACH MISSION LOCATION.

9. **Representations and Warranties of Independent Contractor.** IC represents and warrants that: IC (a) has a valid and current passport (b) has the minimum required number of years of military, similar police, or local guard force experience, (c) is physically and mentally fit to withstand the rigors of the environment and duties, (d) is not a party to any agreement, contract or arrangement that prohibits IC from entering into this Agreement with the Company or performing the Services, and (e) entering into this Agreement and performing the Services does not and shall not violate any applicable law, rule or regulation.

10. **Safeguarding of Information.** IC shall exercise the utmost discretion in regard to all matters relating to IC's duties and functions. IC shall not communicate to any person any information known to IC by reason of IC's performance of the Services under this Agreement which has not been made public, except in the necessary performance of IC's duties or upon written authorization of Company. All documents and records (including photographs) generated during the performance of work under this Agreement shall be for the sole use of and become the exclusive property of Company. Furthermore, no article, book, pamphlet, recording, broadcast, speech, television appearance, film or photograph concerning any aspect of work performed under this Agreement shall be published or disseminated through any media without written authorization of Company. If contacted by the media, IC will state nothing more than "no comment" and will refer the media representative

CONFIDENTIAL AND PROPRIETARY INFORMATION

to the Company. These obligations do not cease upon the expiration or termination of this Agreement. Any violation of this provision by IC will entitle Company to terminate IC at its discretion, or withhold any Term Completion Bonus or other compensation to be paid to IC.

**11. Conduct of Independent Contractor.** IC must comply with all laws and regulations of the Mission Location country including, but not limited to, laws related to currency, black market, and drug use and alcohol abuse. IC must comply with applicable laws and regulations of the United States, and applicable laws and regulations of any country where IC is a citizen or resident. IC must perform effectively in the implementation of this Contract and must comply with the Prime Contract. IC must respect local customs and conform to a high standard of moral and ethical conduct. Personal attire and hygiene must be in accordance with the Company's policies. IC must comply with the Company Policies, Customer's rules, regulations, procedures and polices, and the United States Department of State security, health and safety regulations, and directives. Any violation of this provision entitles Company to terminate IC at its discretion, and withhold payment of the Term Completion Bonus.

**12. Release and Hold Harmless.** IC AGREES TO RELEASE AND HOLD HARMLESS THE COMPANY AND THE CUSTOMER, THEIR RESPECTIVE CORPORATE AFFILIATES AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS AND THEIR SUCCESSORS AND ASSIGNS FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES, LIABILITIES, DAMAGES, AND EXPENSES (INCLUDING, WITHOUT LIMITATION, INCIDENTAL COSTS AND EXPENSES, REASONABLE ATTORNEYS' FEES, REASONABLE COST OF INVESTIGATION AND LITIGATION, INTEREST AND PENALTIES) ARISING OUT OF ANY DAMAGES, INJURIES OR DEATHS TO IC OR OTHER PERSONS RESULTING, DIRECTLY OR INDIRECTLY, FROM THE SERVICES PERFORMED BY IC EVEN WHERE THE LOSS, DAMAGE, PERSONAL INJURY, OR DEATH IS CAUSED OR CONTRIBUTED TO, IN ANY MANNER, BY THE COMPANY.

**13. Heirs Etc. of Independent Contractor.** EVERY PROVISION IN THIS AGREEMENT IS EQUALLY BINDING ON AND EFFECTIVE AS TO THE HEIRS, AGENTS, SPOUSE (IF ANY), CHILDREN, REPRESENTATIVES, GUARDIANS, ASSIGNS, DEPENDENTS, EXECUTORS, ADMINISTRATORS, ATTORNEYS AND ANY OTHER PERSON OR ENTITY CLAIMING TO REPRESENT IC OR HIS ESTATE.

**14. Governing Law and Jurisdiction.** This Agreement shall be governed by and construed under the laws of the State of Virginia, USA, as if performed wholly within the state and without giving effect to the principles of conflicts of laws. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement must be brought against any of the parties in the courts of the State of Virginia, USA. Notwithstanding any other provision in this Agreement, Company reserves the right to pursue any and all available legal remedies and actions against IC in the event of a breach or violation of the terms of this Agreement.

**15. Foreign Language Version.** At its discretion, Company may provide IC with a version of this Agreement translated into IC's native language for the convenience of IC. In the event that there is a conflict or inconsistency between the English-language version of this Agreement and the Foreign language-version, the English language version controls.

BY SIGNING BELOW, IC REPRESENTS AND WARRANTS THAT HE HAS CAREFULLY READ THIS AGREEMENT AND FULLY UNDERSTANDS ITS CONTENTS, INCLUDING IC'S PERSONAL ASSUMPTION OF RISK, THE RELEASE OF LIABILITY, AND THE LIMITATION ON EMPLOYMENT. IC FULLY UNDERSTANDS THAT, BY SIGNING BELOW, HE IS WAIVING SOME OF HIS LEGAL RIGHTS, AND IC IS FREE TO SEEK THE ADVICE OF AN ATTORNEY BEFORE SIGNING.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed.

Triple Canopy Operations, Inc.

Mark Young - BESF Project Manager

Independent Contractor

Alejandro Eladio Cerna Motta

CONFIDENTIAL AND PROPRIETARY INFORMATION

# INDEPENDENT CONTRACTOR AGREEMENT

This Agreement is made as of the date listed below (the "Effective Date") by and between Triple Canopy Operations, Inc., an Illinois Corporation with its main office located at 2250 Corporate Park Drive, Suite 300, Herndon, Virginia 20171 USA (the "Company") and the undersigned, an individual ("Independent Contractor" or "IC").

## Definitions and Terms:

Name of IC: *Castro Rugel, Juan Francisco*

Mission Location: _____ BESF _____

Daily Rate: $ 33 per day

Term Completion Bonus: $ 1500 per 730 ✓

Effective Date: _____ 22 April 2007 _____

Term of Services: _____ 12 months _____

End Date: _____ 21 July 2008 _____

Monthly Advance: $ 100 per month

| Service Category: (select proper category) | | | | |
|---|---|---|---|---|
| ( ) | Supervisor | ( ) | Operational Support | |
| ( ) | Senior Guard | ( ) | Administrative Support | |
| (X) | Guard | ( ) | Other: _____ | |
| ( ) | Guard Driver | | | |

"Customer" means the client of the Company.

"Prime Contract" means an agreement between the Company and the Customer.

"Services" means the services which IC will provide to the Company or the Customer pursuant to this Agreement at the direction of the Company.

"Company Policies" refers to the Company policies that address various performance-related requirements and expectations that apply to the conduct and performance of IC. Copies of the Company Policies will be made available to IC and are hereby incorporated by reference into this Agreement.

## Agreement

1. **Engagement.** The Company hereby engages IC to perform the Services as an independent contractor in the service category listed above ("Service Category") in accordance with the terms and conditions of this Agreement. IC is not an employee of Company and is not entitled to any employment benefits or rights not specifically set forth in this Agreement. The Services will be performed primarily in and around the area specified above (the "Mission Location"). The applicable qualifications for the Service categories above are included in the Addendum A to this Agreement. IC represents that IC has reviewed the qualification requirements provided in Addendum A and further represents that IC meets the applicable requirements. IC also acknowledges that payment to IC to perform the Services is contingent upon (1) IC's successful completion of the Company's required training, (2) IC's ability and availability to deploy to the Mission Location, and (3) the approval and issuance of a Moderate Risk Public Trust (MRPT) or other applicable security clearance to IC by the U.S. Government. Failure to successfully complete the required training, to deploy to the Mission Location, or to obtain the required security clearance will entitle Company to terminate this Agreement at its discretion without further payment to IC.' If IC fails to obtain the required security clearance and has already been deployed to the Mission Location, IC will be paid for services rendered up to the date of termination.

2. **Term and Termination.** The Services provided shall for the period listed above ("Term of Services"), and shall end on the date listed above ("End Date"). Notwithstanding the Term of Services and End Date, the Company may terminate this Agreement immediately at any time without cause by giving notice to IC. Upon termination of this Agreement, IC shall immediately return all property and equipment issued by Company or the Customer to IC in a safe and effective manner. IC acknowledges and agrees that IC may be terminated immediately upon notice from the Company and that

**EXHIBIT**

**D**

CONFIDENTIAL AND PROPRIETARY INFORMATI

IC is not entitled to any severance compensation or any cure period.

3. **Compensation.** In consideration of the Services to be performed by IC, the Company agrees to pay IC the daily rate ("Daily Rate") listed above. The Daily Rate payments will begin once IC arrives at the Mission Location. All payments will be calculated in U.S. Dollars. IC also shall earn a term completion bonus ("Term Completion Bonus") in the amount listed above, which will be paid in full upon the successful completion of the entire term of this Agreement. IC will be paid the Daily Rate monthly in arrears. If IC (1) fails to complete the term of the Agreement without cause, as determined by Company, (2) is terminated for cause by Company, or (3) violates any other term of this Agreement, IC will not receive or be entitled to any portion of the Term Completion Bonus.

4. **Expenses and Insurance.** Company will provide IC with a monthly advance payment ("Monthly Advance") as stated above for use by the IC for personal expenses. The monthly advance payment shall be deducted from IC's monthly compensation from Company. No cash per diem or cash incidental will be paid to IC. The Company will provide IC with Defense Base Act and/or other insurance coverage pursuant to the Prime Contract and the appropriate U.S. regulations.

5. **Life Support, Equipment and Travel.** IC will be provided with food, housing and certain equipment specified by the Company. Any and all equipment provided to IC by Company is the responsibility of IC, and IC shall compensate the Company for any lost or damaged equipment. Any and all equipment provided to IC will be returned to the Company at the end of this Agreement. IC will be provided with airfare to and from the Mission Location, except as may otherwise be stated in this Agreement.

6. **Non-Compete.** During the term of this Agreement and for six months thereafter, IC shall not engage in any business or other activities, which are or may be, directly or indirectly, competitive with the business activities of the Company, including, but not limited to, performing similar services for a party other than the Company without obtaining the prior written consent of the Company. In light of the continuing obligations required of IC under this Agreement, IC agrees that during the term of this Agreement and for six months thereafter, IC will provide a complete copy of this Agreement to any prospective employer or contractor prior to accepting employment with or being retained by such employer or contractor. To

this end, IC may obtain additional copies of this Agreement upon request. IC acknowledges that the Company would not have retained IC if this Agreement had not contained this Section 6.

7. **Dangerous Environment.** IC UNDERSTANDS AND ACKNOWLEDGES THAT PERFORMING THE SERVICES WILL EXPOSE IC TO MANY OF THE HAZARDS OF A HIGH THREAT ENVIRONMENT INCLUDING BUT NOT LIMITED TO THE EXTREME AND UNPREDICTABLE THREATS AND HAZARDS OF WAR AND OTHER COMMON AND UNCOMMON THREATS AND HAZARDS. IC FULLY APPRECIATES THAT PERFORMING THE SERVICES IS INHERENTLY DANGEROUS AND MAY RESULT IN DEATH OR PERSONAL INJURY TO IC, OR OTHERS, OR DAMAGE TO PERSONAL PROPERTY.

8. **Assumption of Risk.** IC VOLUNTARILY, WILLINGLY, AND KNOWINGLY ASSUMES ANY AND ALL RISKS, KNOWN AND UNKNOWN, AND IN ANY WAY ASSOCIATED WITH GENERAL TRAINING, PERFORMING THE SERVICES, AND TRAVELING TO AND FROM AND BEING IN EACH MISSION LOCATION.

9. **Representations and Warranties of Independent Contractor.** IC represents and warrants that: IC (a) has a valid and current passport (b) has the minimum required number of years of military, similar police, or local guard force experience, (c) is physically and mentally fit to withstand the rigors of the environment and duties, (d) is not a party to any agreement, contract or arrangement that prohibits IC from entering into this Agreement with the Company or performing the Services, and (e) entering into this Agreement and performing the Services does not and shall not violate any applicable law, rule or regulation.

10. **Safeguarding of Information.** IC shall exercise the utmost discretion in regard to all matters relating to IC's duties and functions. IC shall not communicate to any person any information known to IC by reason of IC's performance of the Services under this Agreement which has not been made public, except in the necessary performance of IC's duties or upon written authorization of Company. All documents and records (including photographs) generated during the performance of work under this Agreement shall be for the sole use of and become the exclusive property of Company. Furthermore, no article, book, pamphlet, recording, broadcast, speech, television appearance, film or photograph concerning any aspect of work performed under this Agreement shall be published or disseminated through any media without written authorization of Company. If contacted by the media, IC will state nothing more than "no comment" and will refer the media representative

to the Company. These obligations do not cease upon the expiration or termination of this Agreement. Any violation of this provision by IC will entitle Company to terminate IC at its discretion, or withhold any Term Completion Bonus or other compensation to be paid to IC.

**11. Conduct of Independent Contractor.** IC must comply with all laws and regulations of the Mission Location country including, but not limited to, laws related to currency, black market, and drug use and alcohol abuse. IC must comply with applicable laws and regulations of the United States, and applicable laws and regulations of any country where IC is a citizen or resident. IC must perform effectively in the implementation of this Contract and must comply with the Prime Contract. IC must respect local customs and conform to a high standard of moral and ethical conduct. Personal attire and hygiene must be in accordance with the Company's policies. IC must comply with the Company Policies, Customer's rules, regulations, procedures and polices, and the United States Department of State security, health and safety regulations, and directives. Any violation of this provision entitles Company to terminate IC at its discretion, and withhold payment of the Term Completion Bonus.

**12. Release and Hold Harmless.** IC AGREES TO RELEASE AND HOLD HARMLESS THE COMPANY AND THE CUSTOMER, THEIR RESPECTIVE CORPORATE AFFILIATES AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS AND THEIR SUCCESSORS AND ASSIGNS FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES, LIABILITIES, DAMAGES, AND EXPENSES (INCLUDING, WITHOUT LIMITATION, INCIDENTAL COSTS AND EXPENSES, REASONABLE ATTORNEYS' FEES, REASONABLE COST OF INVESTIGATION AND LITIGATION, INTEREST AND PENALTIES) ARISING OUT OF ANY DAMAGES, INJURIES OR DEATHS TO IC OR OTHER PERSONS RESULTING,

DIRECTLY OR INDIRECTLY, FROM THE SERVICES PERFORMED BY IC EVEN WHERE THE LOSS, DAMAGE, PERSONAL INJURY, OR DEATH IS CAUSED OR CONTRIBUTED TO, IN ANY MANNER, BY THE COMPANY.

**13. Heirs Etc. of Independent Contractor.** EVERY PROVISION IN THIS AGREEMENT IS EQUALLY BINDING ON AND EFFECTIVE AS TO THE HEIRS, AGENTS, SPOUSE (IF ANY), CHILDREN, REPRESENTATIVES, GUARDIANS, ASSIGNS, DEPENDENTS, EXECUTORS, ADMINISTRATORS, ATTORNEYS AND ANY OTHER PERSON OR ENTITY CLAIMING TO REPRESENT IC OR HIS ESTATE.

**14. Governing Law and Jurisdiction.** This Agreement shall be governed by and construed under the laws of the State of Virginia, USA, as if performed wholly within the state and without giving effect to the principles of conflicts of laws. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement must be brought against any of the parties in the courts of the State of Virginia, USA. Notwithstanding any other provision in this Agreement, Company reserves the right to pursue any and all available legal remedies and actions against IC in the event of a breach or violation of the terms of this Agreement.

**15. Foreign Language Version.** At its discretion, Company may provide IC with a version of this Agreement translated into IC's native language for the convenience of IC. In the event that there is a conflict or inconsistency between the English-language version of this Agreement and the Foreign language-version, the English language version controls.

BY SIGNING BELOW, IC REPRESENTS AND WARRANTS THAT HE HAS CAREFULLY READ THIS AGREEMENT AND FUI UNDERSTANDS ITS CONTENTS, INCLUDING IC'S PERSONAL ASSUMPTION OF RISK, THE RELEASE OF LIABILITY, AND 1 LIMITATION ON EMPLOYMENT. IC FULLY UNDERSTANDS THAT, BY SIGNING BELOW, HE IS WAIVING SOME OF HIS LEC RIGHTS, AND IC IS FREE TO SEEK THE ADVICE OF AN ATTORNEY BEFORE SIGNING.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed.

Triple Canopy Operations, Inc.

Independent Contractor

JUAN FRANCISCO CASTRO RUGEL

**Attachments:** Addendum A (Qualifications)

CONFIDENTIAL AND PROPRIETARY INFORMATION

## INDEPENDENT CONTRACTOR AGREEMENT

This Agreement is made as of the date listed below (the "Effective Date") by and between Triple Canopy Operations, Inc., an Illinois Corporation with its main office located at 2250 Corporate Park Drive, Suite 300, Herndon, Virginia 20171 USA (the "Company") and the undersigned, an individual ("Independent Contractor" or "IC").

### Definitions and Terms:

| | |
|---|---|
| Name of IC: __Juan Francisco Castro Rugel__ | Effective Date: _____15 May 2008_____ |
| Mission Location: ____Baghdad, Iraq____ | Term of Services: ___12___ months___ |
| Daily Rate: $ __33__ per day | End Date: _____15 July 2009_____ |
| Term Completion Bonus: $ __1500__ per 365 days | Monthly Advance: $ __100__ per month |
| Training Rate: _____N/A_____ | (applies to Training at the Mission Location only) |

Service Category:  
(select proper category)  
( ) Supervisor  
( ) Senior Guard  
(X) Guard  
( ) Guard Driver

( ) Operational Support  
( ) Administrative Support  
( ) Other:

"*Customer*" means the client of the Company.

"*Prime Contract*" means an agreement between the Company and the Customer.

"*Services*" means the services which IC will provide to the Company or the Customer pursuant to this Agreement at the direction of the Company.

"*Training Rate*" means the amount the IC will be paid while at the Mission Location completing the company's required training. After completion of the training, the IC will be paid the Daily Rate and Term Completion Bonus as set forth below. Training conducted at any location other than the Mission Location is not eligible for Training Rate payments.

"*Company Policies*" refers to the Company policies that address various performance-related requirements and expectations that apply to the conduct and performance of IC. Copies of the Company Policies will be made available to IC and are hereby incorporated by reference into this Agreement.

### Agreement

1. **Engagement.** The Company hereby engages IC to perform the Services as an Independent contractor in the service category listed above ("Service Category") in accordance with the terms and conditions of this Agreement. **IC is not an employee of Company and is not entitled to any employment benefits or rights not specifically set forth in this Agreement.** The Services will be performed primarily in and around the area specified above (the "Mission Location"). The applicable qualifications for the Service categories above are included in the Addendum A to this Agreement. IC represents that IC has reviewed the qualification requirements provided in Addendum A and further represents that IC meets the applicable requirements. IC also acknowledges that payment to IC to perform the Services is contingent upon (1) IC's successful

completion of the Company's required training, (2) IC's ability and availability to deploy to the Mission Location, and (3) the approval and issuance of a Moderate Risk Public Trust (MRPT) or other applicable security clearance to IC by the U.S. Government. Failure to successfully complete the required training, to deploy to the Mission Location, or to obtain the required security clearance will entitle Company to terminate this Agreement at its discretion without further payment to IC. If IC fails to obtain the required security clearance and has already been deployed to the Mission Location, IC will be paid for services rendered up to the date of termination.

2. **Term and Termination.** The Services provided shall for the period listed above ("**Term of Services**"), and shall end on the date listed above ("**End Date**"). Notwithstanding the Term of Services

BESF INDEPENDENT CONTRACTOR AGREEMENT

UPDATED 02.27.08


EXHIBIT
E

CONFIDENTIAL AND PROPRIETARY INFORMATION

and End Date, the Company may terminate this Agreement immediately at any time without cause by giving notice to IC. Upon termination of this Agreement, IC shall immediately return all property and equipment issued by Company or the Customer to IC in a safe and effective manner. IC acknowledges and agrees that IC may be terminated immediately upon notice from the Company and that IC is not entitled to any severance compensation or any cure period.

3. **Compensation.** In consideration of the Services to be performed by IC, the Company agrees to pay IC the daily rate ("**Daily Rate**") listed above. **The Daily Rate payments will begin once IC arrives at the Mission Location and has completed all of the Company's required training. If the IC is deployed to the Mission Location for completion of the Company's required training, the IC will receive the Training Rate until the required training is completed.** All payments will be calculated in U.S. Dollars. While performing the Services at the Daily Rate, IC also shall earn a term completion bonus ("**Term Completion Bonus**") in the amount listed above, which will be paid in full upon the successful completion of the entire term of this Agreement. IC will be paid the Daily Rate monthly in arrears. If IC (1) fails to complete the term of the Agreement without cause, as determined by Company, (2) is terminated for cause by Company, or (3) violates any other term of this Agreement, IC will not receive or be entitled to any portion of the Term Completion Bonus.

4. **Expenses and Insurance.** Company will provide IC with a monthly advance payment ("**Monthly Advance**") as stated above for use by the IC for personal expenses. The monthly advance payment shall be deducted from IC's monthly compensation from Company. No cash per diem or cash incidental will be paid to IC. The Company will provide IC with Defense Base Act and/or other insurance coverage pursuant to the Prime Contract and the appropriate U.S. regulations.

5. **Life Support, Equipment and Travel.** IC will be provided with food, housing and certain equipment specified by the Company. Any and all equipment provided to IC by Company is the responsibility of IC, and IC shall compensate the Company for any lost or damaged equipment. Any and all equipment provided to IC will be returned to the Company at the end of this Agreement. IC will be provided with airfare to and from the Mission Location, except as may otherwise be stated in this Agreement.

6. **Non-Compete.** During the term of this Agreement and for six months thereafter, IC shall not engage in any business or other activities, which are or may be, directly or indirectly, competitive with the business activities of the Company, including, but not limited to, performing similar services for a party other than the Company

without obtaining the prior written consent of the Company. In light of the continuing obligations required of IC under this Agreement, IC agrees that during the term of this Agreement and for six months thereafter, IC will provide a complete copy of this Agreement to any prospective employer or contractor prior to accepting employment with or being retained by such employer or contractor. To this end, IC may obtain additional copies of this Agreement upon request. IC acknowledges that the Company would not have retained IC if this Agreement had not contained this Section 6.

7. **Dangerous Environment.** IC UNDERSTANDS AND ACKNOWLEDGES THAT PERFORMING THE SERVICES WILL EXPOSE IC TO MANY OF THE HAZARDS OF A HIGH THREAT ENVIRONMENT INCLUDING BUT NOT LIMITED TO THE EXTREME AND UNPREDICTABLE THREATS AND HAZARDS OF WAR AND OTHER COMMON AND UNCOMMON THREATS AND HAZARDS. IC FULLY APPRECIATES THAT PERFORMING THE SERVICES IS INHERENTLY DANGEROUS AND MAY RESULT IN DEATH OR PERSONAL INJURY TO IC, OR OTHERS, OR DAMAGE TO PERSONAL PROPERTY.

8. **Assumption of Risk.** IC VOLUNTARILY, WILLINGLY, AND KNOWINGLY ASSUMES ANY AND ALL RISKS, KNOWN AND UNKNOWN, AND IN ANY WAY ASSOCIATED WITH GENERAL TRAINING, PERFORMING THE SERVICES, AND TRAVELING TO AND FROM AND BEING IN EACH MISSION LOCATION.

9. **Representations and Warranties of Independent Contractor.** IC represents and warrants that: IC (a) has a valid and current passport (b) has the minimum required number of years of military, similar police, or local guard force experience, (c) is physically and mentally fit to withstand the rigors of the environment and duties, (d) is not a party to any agreement, contract or arrangement that prohibits IC from entering into this Agreement with the Company or performing the Services, and (e) entering into this Agreement and performing the Services does not and shall not violate any applicable law, rule or regulation.

10. **Safeguarding of Information.** IC shall exercise the utmost discretion in regard to all matters relating to IC's duties and functions. IC shall not communicate to any person any information known to IC by reason of IC's performance of the Services under this Agreement which has not been made public, except in the necessary performance of IC's duties or upon written authorization of Company. All documents and records (including photographs) generated during the performance of work under this Agreement shall be for the sole use of and become the exclusive property of Company. Furthermore, no article, book, pamphlet, recording, broadcast, speech, television appearance, film or photograph concerning any aspect of work performed under this Agreement shall be published or disseminated through any media without written authorization of

CONFIDENTIAL AND PROPRIETARY INFORMATION

Company. If contacted by the media, IC will state nothing more than "no comment" and will refer the media representative to the Company. These obligations do not cease upon the expiration or termination of this Agreement. Any violation of this provision by IC will entitle Company to terminate IC at its discretion, or withhold any Term Completion Bonus or other compensation to be paid to IC.

**11. Conduct of Independent Contractor.** IC must comply with all laws and regulations of the Mission Location country including, but not limited to, laws related to currency, black market, and drug use and alcohol abuse. IC must comply with applicable laws and regulations of the United States, and applicable laws and regulations of any country where IC is a citizen or resident. IC must perform effectively in the implementation of this Contract and must comply with the Prime Contract. IC must respect local customs and conform to a high standard of moral and ethical conduct. Personal attire and hygiene must be in accordance with the Company's policies. IC must comply with the Company Policies, Customer's rules, regulations, procedures and polices, and the United States Department of State security, health and safety regulations, and directives. Any violation of this provision entitles Company to terminate IC at its discretion, and withhold payment of the Term Completion Bonus.

**12. Release and Hold Harmless.** IC AGREES TO RELEASE AND HOLD HARMLESS THE COMPANY AND THE CUSTOMER, THEIR RESPECTIVE CORPORATE AFFILIATES AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS AND THEIR SUCCESSORS AND ASSIGNS FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES, LIABILITIES, DAMAGES, AND EXPENSES (INCLUDING, WITHOUT LIMITATION, INCIDENTAL COSTS AND EXPENSES, REASONABLE ATTORNEYS' FEES, REASONABLE COST OF INVESTIGATION AND LITIGATION, INTEREST AND PENALTIES) ARISING OUT OF ANY DAMAGES, INJURIES OR DEATHS TO IC OR OTHER PERSONS RESULTING, DIRECTLY OR INDIRECTLY, FROM THE SERVICES

PERFORMED BY IC EVEN WHERE THE LOSS, DAMAGE, PERSONAL INJURY, OR DEATH IS CAUSED OR CONTRIBUTED TO, IN ANY MANNER, BY THE COMPANY.

**13. Heirs Etc. of Independent Contractor.** EVERY PROVISION IN THIS AGREEMENT IS EQUALLY BINDING ON AND EFFECTIVE AS TO THE HEIRS, AGENTS, SPOUSE (IF ANY), CHILDREN, REPRESENTATIVES, GUARDIANS, ASSIGNS, DEPENDENTS, EXECUTORS, ADMINISTRATORS, ATTORNEYS AND ANY OTHER PERSON OR ENTITY CLAIMING TO REPRESENT IC OR HIS ESTATE.

**14. Governing Law and Jurisdiction.** This Agreement shall be governed by and construed under the laws of the State of Virginia, USA, as if performed wholly within the state and without giving effect to the principles of conflicts of laws. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement must be brought against any of the parties in the courts of the State of Virginia, USA. Notwithstanding any other provision in this Agreement, Company reserves the right to pursue any and all available legal remedies and actions against IC in the event of a breach or violation of the terms of this Agreement.

**15. Foreign Language Version.** At its discretion, Company may provide IC with a version of this Agreement translated into IC's native language for the convenience of IC. In the event that there is a conflict or inconsistency between the English-language version of this Agreement and the Foreign language-version, the English language version controls.

**16. Jury Trial Waiver.** The Company and IC knowingly and voluntarily agree to waive their respective rights to a jury trial on any claim arising out of or relating to this Agreement and thereby agree not to demand a trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement.

BY SIGNING BELOW, IC REPRESENTS AND WARRANTS THAT HE HAS CAREFULLY READ THIS AGREEMENT AND FULLY UNDERSTANDS ITS CONTENTS, INCLUDING IC'S PERSONAL ASSUMPTION OF RISK, THE RELEASE OF LIABILITY, AND THE LIMITATION ON EMPLOYMENT. IC FULLY UNDERSTANDS THAT, BY SIGNING BELOW, HE IS WAIVING SOME OF HIS LEGAL RIGHTS, AND IC IS FREE TO SEEK THE ADVICE OF AN ATTORNEY BEFORE SIGNING.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed.

Triple Canopy Operations, Inc.

Mark Young - BESF Project Manager

Independent Contractor

Juan Francisco Castro Rugel

Attachments:   Addendum A (Qualifications)

BESF INDEPENDENT CONTRACTOR AGREEMENT

UPDATED 02.27.08